# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 2:09-cr-00354-PMP-PAL |
| Plaintiff, ) | |
| ) | **REPORT OF FINDINGS** |
| vs. ) | **AND RECOMMENDATION** |
| ) | |
| GEORGIA OLMAN, ) | (Mtn to Suppress - Dkt. #19) |
| ) | |
| Defendant. ) | |

This matter is before the court on Defendant Georgia Olman's ("Olman") Motion to Suppress Bank Records and Any and All Statements and Information Stemming from the Use of These Bank Records (Dkt. #19) filed February 3, 2010.  On February 4, 2010, the government filed a Response (Dkt. #20). Olman replied (Dkt. #23) on February 23, 2010.  The court has considered the motion, response, and reply.

## BACKGROUND

**A.    Factual and Procedural Background.**

On August 26, 2009, the grand jury returned an Indictment (Dkt. #1) against Olman, charging her with one count of social security fraud pursuant to 42 U.S.C. § 408(a)(4).  The Indictment (Dkt. #1) alleges that between September 20, 2002 and January 31, 2008, Olman "intentionally concealed and failed to disclose that she had not, as claimed, sold her business Gallery Gigi,[1] that she continued to participate in this business and that she continued to receive income from her employment in and with the business." Indictment, Dkt. #1.

Between 1996 and 1998, Olman used the drug Phen-fen for weight loss, which caused her to suffer migraine headaches and heart problems.  See Report of Interview, attached as Exhibit 2 to

---

[1] It is unclear whether Olman's business is called Galerie Gigi or Gallery Gigi.  For consistency, the court will refer to it throughout this report of findings and recommendation as "Gallery Gigi."

Olman's Motion to Suppress. In February 2003, Olman was exposed to mold and asbestos, and she now suffers from respiratory problems. On September 20, 2002, Olman applied for benefits from the Social Security Administration ("SSA"). See SSA Application, attached as Exhibit 3 to Motion to Suppress. In her application, Olman stated that her business was an inactive corporation and remained registered in Nevada. Olman's application was approved, and she began receiving monthly disability benefits from the SSA.

On March 8, 2007, Special Agent Jenny Hahn went to Olman's home to conduct an interview with Olman based on suspicions that Olman was operating Gallery Gigi from her home. Agent Hahn forwarded her findings to Special Agent Lance Kidwell, who began an investigation of Olman and her eligibility for Social Security benefits. See Report of Investigation dated 4/12/07, attached as Exhibit 4 to Motion to Suppress. On April 29, 2009, Kidwell interviewed Donna Rosa, the owner and operator of Art Brokerage Incorporated  See Report of Investigation dated 4/29/07, attached as Exhibit 5 to Motion to Suppress. Agent Kidwell became aware of Donna Rose as a result of a "review of bank records." Id. After interviewing Donna Rose, Agent Kidwell interviewed Richard Lynch, President of Hammer Galleries, and Sheila McDermott, Director of Knodler Publishing. See Report of Investigation dated 6/3/09, attached as Exhibit 6 to Motion to Suppress.

**B.     Motion to Suppress Bank Records (Dkt. #19).**

Olman asserts that the bank records obtained by Agent Kidwell, as well as any information obtained as a result of reviewing bank records referred to in his April 29, 2009 report, should be suppressed. Olman argues that the government has not shown that the bank records were lawfully obtained pursuant to the Right to Financial Privacy Act (the "RFPA"), 12 U.S.C. §§ 3401 *et seq.*, and they must be suppressed. Olman concedes that the Ninth Circuit recognized that suppression of evidence obtained in violation of the RFPA is an improper remedy in United States v. Franzin, 780 F.2d 1461 (9th Cir. 1986), but argues that case is distinguishable, and in any event, the court can use its "inherent power to regulate the use of litigation evidence wrongfully obtained" to suppress the bank records. Motion at 6:4-5 (citing Rodgers v. United States Steel Corp., 536 F.2d 1001, 1006 (3d Cir. 1976)). Defendant argues that any remedy other than suppression would violate the protective spirit of the RFPA and render its provisions moot.

1    Olman asserts that pursuant to the fruit of the poisonous tree doctrine, the statements and
2 testimony of Donna Rose, Richard Lynch, and Sheila McDermott, and any information and documents
3 provided by them should also be suppressed. Olman asserts that none of the three exceptions of the
4 exclusionary rule apply, and because the bank records were obtained by an illegal search, any evidence
5 derived as a result of the bank records must also be suppressed as fruit of the poisonous tree.

6    In response, the government asserts that in Franzin, the Ninth Circuit held that there is no
7 suppression remedy for a violation of the FRPA because there is no constitutional right at stake, only a
8 legislatively-created right. The government asserts that Franzin is not distinguishable from this case
9 because there, as Olman alleges here, the government did not comply with the RFPA in obtaining bank
10 records. The government argues that if the court is inclined to suppress the bank records, "the United
11 States may produce the pertinent subpoenas." Response at 2:11. However, counsel for Defendant has
12 not previously requested the subpoenas. The government does not find this surprising because the bank
13 records are not discoverable under Rule 16 of the Federal Rules of Criminal Procedure because they are
14 not material to any defense, and they are not exculpatory material. The government also asserts the
15 fruit of the poisonous tree doctrine does not apply because there was no violation of the FRPA because
16 the bank records were obtained by subpoena. Even assuming the FRPA was violated, there was no
17 Fourth Amendment or other constitutional violation, and the fruit of the poisonous tree doctrine does
18 not apply. Alternatively, the government argues that, if necessary, it could demonstrate it would have
19 discovered Ms. Rose, Mr. Lynch, and Ms. McDermott through independent sources because the Las
20 Vegas art dealer community is not large, and persons who knew Olman operated a gallery would have
21 been located. For this additional reason, the fruit of the poisonous tree doctrine is not applicable.

22    In reply, Olman asserts the government should be made to demonstrate that the bank records
23 were properly obtained to ensure no constitutional rights were violated.

## **DISCUSSION**

25    As a general matter, the RFPA permits challenges by customers of financial institutions to
26 government subpoenas. See 12 U.S.C. § 3410(a). The RFPA was enacted by Congress in response to
27 the United States Supreme Court's ruling in United States v. Miller, 425 U.S. 435 (1976), where the
28 Court held that bank customers had no Fourth Amendment right to privacy for financial information

held by financial institutions.  See, e.g., In re Blunden, 896 F.Supp 996, 999 (C.D. Cal. 1995).  "Both Congress and the Executive regarded the Act as a compromise between a bank customer's right to financial privacy and the need of law enforcement agencies to obtain financial records pursuant to legitimate investigations."  Franzin, 780 F.2d at 1465 (citing H.R.Rep. No. 1383 at 34, reprinted in 1978 U.S.Code Cong. & Ad. News 9273, 9306).  The RFPA requires federal government agencies to provide banking customers with notice and an opportunity to object before a bank can disclose personal financial information to the federal government agency.  See generally 12 U.S.C. §§ 3401 *et seq*.  The Act requires the government to give the customer ten days notice, 12 U.S.C. § 3405, and provides for civil penalties against the government and financial institutions for obtaining or disclosing a customer's financial information without the requisite authorization, 12 U.S.C. § 3417.  These civil remedies are exclusive.  12 U.S.C § 3417(d) provides, "The remedies and sanctions described in this chapter shall be the only authorized judicial remedies and sanctions for violation of this chapter."  Id.  The Ninth Circuit has found that suppression is "excluded under section 3417(d).  Congress deliberately balanced the right of privacy and the needs of law enforcement when it established the protections and penalties of the act.  To imply a suppression remedy under the Act would alter that balance."  Franzin, 780 F.2d at 1466 (internal citations omitted).

The court further noted that the RFPA responded to both the procedural and substantive aspects of Miller by providing both a right to privacy and a remedy for violation of that right.  Id.  The court also found that "[b]ecause the statute, when properly construed, excludes a suppression remedy, it would not be appropriate for us to provide one in the exercise of our supervisory powers over the administration of justice."  Id.

Here, the government claims that the bank records Agent Kidwell reviewed were obtained pursuant to subpoena.  Agent Kidwell's April 29, 2009 report indicates he interviewed witness Donna Rose "as a review of bank records related to OLMAN indicated Rose and OLMAN had conducted business in 2003."  Exhibit 5, attached to Motion to Suppress.  The court cannot determine from the information provided whether the bank records Kidwell reviewed were records of Gallery Gigi or some other incorporated or partnership entity, Olman's personal records, or those of some other entity or individual.  If the records were for Gallery Gigi, Olman does not have standing to challenge the

subpoenas under the RFPA. See 12 U.S.C. § 3401 (4) and (5) (defining customer as "an individual or a partnership of five or fewer individuals" ). Because Gallery Gigi is an incorporated entity, it is not a "customer" under the RFPA, and it falls outside of the scope of the RFPA's customer challenge provisions.

If the bank records were for Olman personally, Franzin controls, and suppression is not an available remedy. In Franzin, the Ninth Circuit explicitly held that there is no suppression remedy available where the government fails to comply with the RFPA in obtaining bank records, and it would be inappropriate for the court to fashion a suppression remedy under the court's supervisory powers.

For these reasons,

**IT IS RECOMMENDED** that the Motion to Suppress (Dkt. #19) be DENIED.

Dated this 5th day of March, 2010.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE